Marshall, Judge.
This is an appeal from an adjudication as a delinquent and the disposition flowing therefrom. Appellant, then a 14-year-old youth, brings four enumerations of error to this court alleging (1) that the Juvenile Court of DeKalb County erred in failing to grant a motion for a directed verdict of not guilty where the petition alleged a theft by taking from an individual, whereas the proof showed the taking to be from a corporation; (2) the alleged erroneous admission of a non-voluntary admission, and the court’s errors in failing to grant a motion for a directed verdict (3) where the only evidence was the uncorroborated confession of the juvenile and (4) the evidence was insufficient to show a crime was committed or that the juvenile committed it.
The transcript reflects that appellant was a part-time employeé of Toney’s Incorporated, which was what amounted to a variety store wholly owned (except for one share in a sister) and managed by Mrs. Willa K. Toney. The store employed approximately 15 or 16 employees. These employees utilized a time clock to record their hours of work. On each Friday, the bookkeeper prepared a payroll from these time cards. Her usual procedure was to compute each employee’s earnings, draw a check for that amount to be used for accounting purposes, and then go to the bank and cash each check. The cash obtained was routinely placed in a metal cash box secured by a three position combination device built into the box. The employees normally came to the bookkeeper for payment around 4:45 p.m. each Friday.
*669 On Friday, October 11, 1974, the bookkeeper followed her usual routine. She returned from the bank with approximately $1,060 in payroll money. She paid about four employees and then left early on that day. At the time she left, she estimated there was approximately $600 in the payroll cash box. The bookkeeper secured the box and turned her payroll responsibilities over to the assistant bookkeeper, Mrs. Arnold.
Mrs. Arnold made a payroll payment to one more employee at about 4:00 p.m. Then she was called to the front of the store to wait on a customer seeking to purchase an item in Mrs. Arnold’s particular area of expertise. Mrs. Arnold left the cash box open and unsecured on a desk in the office area. When she returned about 4:45 p.m., she detected a shortage in the money. Determining that a sufficient amount earlier had been drawn from the bank by the bookkeeper and that additional money was needed, an additional $500 was withdrawn and the payroll payments completed. The following day, a formal accounting reflected that $480 was missing.
Appellant R. W. arrived at the store just prior to 4:00 p.m. and his time card reflected he "punched in” at the work area at 4:01 pm. He subsequently was directed to empty trash baskets from the office area, including the office in which the payroll cash box was resting. After emptying the waste baskets appellant indicated he wanted to leave early and the time card reflected he "punched out” at 4:31 pm. He normally worked from 4:00 to 6:00 p.m.
On the following Tuesday evening at about 6:00 p.m., appellant and his father were asked by Mrs. Toney to come to the store. After their arrival, Mrs. Toney asked R. W. about the missing money. He denied any knowledge of the loss. Mrs. Toney, obviously suspecting appellant, continued to press him. She stated in effect that if he didn’t take the money, obviously he didn’t take it. She informed R. W. she had spoken with a detective and if she couldn’t clear the matter up she would have to turn the matter over to the police for investigation. She further asked R. W. if he would agree to take a polygraph examination and if he "came clean” she would ask all her other employees to take such a test. Mrs. Toney also *670 importuned R. W. to return less than the whole amount if he had taken the money and had spent some of it. She stated she would take back what he had left and there would be no charges brought.
At this point R. W. apparently admitted he had taken the money. He asked if he could return less than the whole amount was the offer not to prosecute still valid? Upon her assurance that her statement was true, R. W. stated he had taken $480 but only had $80 left, having loaned the other $400 to an older brother. Though R. W. allegedly promised to return the $80.00, no money was ever recovered.
At the adjudicatory hearing, appellant denied taking any money and maintained that his admission he had taken $480 was just a statement to "get Mrs. Toney off his back.” Held:
1. Appellant’s first enumeration alleges a fatal variance between the allegation of ownership in Mrs. Willa K. Toney and the proof of ownership in Toney’s, Incorporated. Mrs. Toney stated she was the sole owner and manager of Toney’s, Incorporated. She did not handle the corporation’s money and derived her support from other sources. The corporation existed primarily for its employees and Mrs. Toney was not on the payroll.
Notwithstanding the lack of financial support therefrom, Mrs. Toney was the sole owner and manager of the corporation. The evidence fully supports and authorizes a finding that Mrs. Willa K. Toney was the president, sole owner, and was actually in charge of all the property and operations of Toney’s, Incorporated. As such, she was the agent of Toney’s, Incorporated, and thus was in possession of its property at the time of the larceny. Such possessory interest is sufficient to withstand an assertion of variance between the allegation and proof of ownership. Evans v. State, 60 Ga. App. 597 (4 SE2d 502); Norton v. State, 73 Ga. App. 307 (36 SE2d 120). This enumeration is without merit.
2. The second enumeration of error alleges the erroneous admission into evidence of an involuntary statement. At the adjudication hearing, appellant acknowledged that the constitutionally mandated warning against self-incrimination (Miranda v. Arizona, *671 384 U. S. 436 (86 SC 1602, 16 LE2d 694)) was not required because Mrs. Toney was "not a law enforcement official.” That concession was proper. Luckett v. State (Ind.), 303 NE2d 670 (1973). However, appellant contended at the trial and before this court that as an employer, Mrs. Toney exercised authority over the 14-year-old appellant-employee and the manner in which the employer discussed the larceny with R. W. rendered appellant’s admission involuntary. Byrd v. State, 68 Ga. 661.
Code Ann. § 38-411 provides: "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury.” In this case, appellant admitted taking a sum of $480, the exact amount determined to be missing. There is no evidence that during their discussion, Mrs. Toney ever told R. W. how much money was missing. Further, though the facts might have supported a contention that appellant made a statement because he hoped Mrs. Toney would not prosecute, the only reason he gave was "to get Mrs. Toney off my back.” There was evidence this was a normal conversation in tone and volume and that all Mrs. Toney was attempting to do was get to the bottom of the matter, to ascertain the truth. Appellant was free to leave at any time and was present at the discussion with his father.
The appropriate and correct test in determining voluntariness is whether an inducement, if any, was sufficient, by possibility, to elicit an untrue acknowledgment of guilt. Wilson v. State, 19 Ga. App. 759, 768 (92 SE 309). This is nothing more than a question of fact to be decided by the trier of fact. "If there isa conflict as to whether or not a statement, admission, or confession was made freely and voluntarily, that question then becomes one of fact for determination by the jury [court in this case], provided a prima facie showing is made by the State that such statement was made freely and voluntarily and without hope of benefit or fear of injury.” Smith v. State, 215 Ga. 51, 53 (108 SE2d 688); Garrett v. State, 203 Ga. 756 (48 SE2d 377); Downs v. State, 208 Ga. 619 (68 SE2d 568).
In our opinion, Mrs. Toney was conducting her own *672 private investigation. She did not browbeat or threaten R. W. Appellant was present with his father and was not in any sort of custodial situation. He did not allege that the statement was prompted by a promise of lack of prosecution. His stated reason was presented to the juvenile court and weighed against the other obvious meaning of his statement — that he had indeed taken the money. We find the juvenile court’s determination of voluntariness to be supported amply by the evidence.
Submitted June 17, 1975
Decided September 3, 1975.
Joseph M. Winter, for appellant.
Kathryn Anne Workman, Solicitor, for appellee.
3. The last two enumerations of error deal with the sufficiency of the evidence. We find clear and compelling evidence that $480 was missing under circumstances indicating it had been unlawfully and surreptitiously taken by someone. There is convincing evidence that appellant had access to the missing money at about the time it was taken, considering the evidence in all its reasonable inferences and implications. His admission that he took $480, an amount apparently not known to the employees other than the bookkeeper, was the clinching evidence sustaining appellant’s guilt of the offense charged against him. We find the adjudication as a delinquent fully supported by the evidence and detect no errors warranting reversal action by this court.

Judgment affirmed.

Bell, C. J., and Webb, J., concur.